Turley, J.
delivered the opinion of the court.
Three questions are presented for consideration in this ease. The first involves the construction of the last will of Robert Crawford, which was executed in 1794. By it he provides as follows: “ It is my will that my beloved wife, Isabella Crawford, shall have the whole of my possessions during her widowhood. Item, it is my will that my land I now live on, be divided equally between my two sons, Wm. Crawford and A. Crawford, when they come of age. Item: it is my will that the remainder of my moveable estate be divided among my daughters, and it is my will that my children be allowed a reasonable education out of my estate, likewise that no sale of my estate be made, but that it be valued and remain in the hands of the executors. Also it is my. will that the sheep, hogs, and crop be exempted from the valuation.”
In the construction of this will it is only necessary, for the present case, to determine what interest Isabella Crawford took under it, as to the negroes belonging to Robert Crawford, at the time of his death, and to whom they belong *165 under the will, after the death of said Isabella Crawford. We think that, by the words, “the whole of my possessions,” the testator intended to bequeath all his property to his wife, and that he has done so for the time specified in the will, or during her widowhood, which the proof shows extended to her death. We also think that, by the use of the words, “the remainder of my moveable estate,” he meant to include his negroes, and that he has, by his will, given them exclusively to his daughters, and that their right to possess and enjoy them commenced upon the death of the testator’s wife. We think that this is a fair construction of the will; not only because the words, “ moveable estate,” are sufficiently capacious to include negroes, but because in the clause immediately preceding, he says, “ it is my will that my land, that I now live on, be divided equally between my two sons, Wm. Crawford and A. Crawford, when they arrive at age,” and immediately proceeds; “ it is my will that the remainder of my moveable estate be divided among my daughters. The juxtaposition of the words, land and moveable estate, shows satisfactorily that they were designed to embrace property according to their legal meaning, to wit, real and personal. Under the clause, making provision for his daughters, if the word “ moveable ” had been left out, all the balance of the estate, whether real or personal, would have been embraced in it, and there may have been other lands not specified in the devise to his two sons, which is alone for the land upon which he lived; he seems to have thought, that the devise of this particular tract to his two sons, and of the moveable property to his daughters, put them upon an equality, thus far; and if there were other lands not embraced in the devise to the sons, they descend equally to the sons and daughters, so that equality will be produced.
*166 2. Are the complainant’s rights bound by the operation of the statute of limitations? We think not. Under the will Isabella Crawford, the widow of the testator, was entitled to the possession of the negroes and their increase during her widowhood, which, as we have seen, extended to her death. Then the daughters, of whom Lydia is one, had no right to the possession of the negroes, or to maintain any action in relation thereto, except for their preservation until the happening of that event. Previous thereto Lydia was married to the complainant, Brown, and was, therefore, a feme covert, at the time her right of possession, and consequently right of action to the negroes, accrued, and no bar of these rights is created by lapse of time, and the neglect of her husband to enforce her claim, though more than three years from the death of her mother elapsed before this bill was filed, and though the defendant, from that period, held the slaves which are the subject of controversy adversely to her rights and all others. This bill being filed to get possession of her share of the negroes, and have them secured to her by settlement, freed from the marital rights of her husband, and she being excepted from the operation of the statute of limitations, the court has no difficulty in decreeing the relief. The husband having never reduced the negroes to possession, has no legal right in them. To reduce them into possession, he is driven to use the name of the wife in a court of chancery, which will treat the case according to the rights and equity of the parties, and will view it in the same light, as if the bill had been filed by the wife, through her next friend; in which case the negroes would have been decreed to her separate use and maintenance, notwithstanding the lapse of time, as the wife is not bound thereby, and the husband had no interest to bar.
*167 3. But it is said that there is no sufficient proof in the record, that the complainant, Lydia, was a feme covert at the time her right of action, as to these negroes, accrued. We think otherwise; because, in the first place, in the will of Isabella Crawford, the widow of the testator, under which will, the defendant claims to hold the negroes, by the operation of the statute of limitations, there is a clause in the words following: “ It is my will that my daughter, Lydia Brown, shall have five dollars out of my estate in two years after my decease.” This we look upon as establishing satisfactorily that the complainant, Lydia, was a feme covert at the date of the execution of the will, and previous to the vesting of her right to the possession of the negroes and her consequent right to sue. She has not become discovert since. And second, we think the answer of Wm. M. Crawford fully .admits her covert-ure, and the death of his mother. We, therefore, affirm the decree of the Chancellor.